STATE EX REL. JAMES A. FLORES v. RALPH H. TAHASH.

138 N. W. (2d) 626.

December 3, 1965—No. 39,431.

*James A. Flores,* pro se, for appellant.

*Robert W. Mattson,* Attorney General, and *J. Earl Cudd,* Special Assistant Attorney General, for respondent, warden of State Prison.

OTIS, JUSTICE.

Defendant, having pled guilty to the unlawful possession of empirin compound with codeine phosphate, was sentenced to a term of 10 to 40 years. At the presentence examination, he freely admitted that at the time of his arrest he had on his person at least 85 bottles containing a variety of narcotic drugs. After the time to appeal had elapsed, defendant petitioned the district court for a writ of habeas corpus, alleging that the

information failed to charge a specific offense for which a penalty could be imposed and that he was denied his right to effective counsel.

After conducting a hearing at which defendant appeared pro se, the court ordered the writ discharged. This appeal followed. We remanded the matter to clarify the issue of whether or not, on the date of the alleged offense, empirin compound with codeine phosphate was a narcotic drug the possession of which was prohibited by Minn. St. 618.02. Counsel was appointed to represent defendant and to act as a friend of the court in determining that question. The trial court made findings of fact and conclusions of law holding that on the date in question empirin compound with codeine phosphate was a narcotic drug within the meaning of the statute.[1]

A pharmaceutical expert called by counsel for defendant testified in the following manner:

---

[1] The applicable statutes are:

Minn. St. 618.01, subd. 14, provides: " 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone, and every other substance neither chemically nor physically distinguishable from them; *any other drugs to which the federal narcotic laws may now apply;* and any other drug which is hereafter included under the federal narcotic law and found by the state board of health after reasonable notice and opportunity for hearing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, from the effective date of determination of such finding by said state board of health." (Italics supplied.)

42 USCA, § 201(j), provides: "The term 'habit-forming narcotic drug' or 'narcotic' means opium and coca leaves and the several alkaloids derived therefrom, the best known of these alkaloids being morphia, heroin, and *codeine,* obtained from opium, and cocaine derived from the coca plant; all compounds, salts, preparations, or other derivatives obtained either from the raw material or from the various alkaloids; Indian hemp and its various derivatives, compounds, and preparations, and peyote in its various forms; isonipecaine and its derivatives, compounds, salts, and preparations; opiates (as defined in section 3228(f) of Title 26)." (Italics supplied.)

Minn. St. 618.02 provides: "Except as authorized by this chapter it shall be unlawful for any person to sell, prescribe, administer, dispense or furnish to a minor, or manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug."

"Q. Now Doctor, can you make some comparison for us as to the amount of codeine which would be consumed, say, in a teaspoonful of syrup, cough syrup, as compared with one tablet of empirin compound with codeine phosphate, assuming that this was a 1/8 grain tablet of codeine?

"A. The maximum amount of codeine that an exempt codeine-containing cough syrup may contain, as you stated, is one grain of codeine phosphate per fluid ounce. The usual dose of such a preparation would be one teaspoonful. This would be approximately 1/6 of an ounce. So that the amount of codeine contained in a teaspoonful of such a cough syrup would be about 1/6 grain.

"Q. 1/6 grain?

"A. A teaspoonful of such an exempt codeine containing cough syrup would therefore contain more codeine phosphate than would be contained in one—1/8 grain codeine phosphate empirin compound with codeine phosphate."

■ While the defendant concedes that possession of tablets containing codeine in the amounts found on his person is a violation of the statute, he asserts that under the evidence the statute denies him the equal protection of the laws guaranteed by the State and Federal Constitutions. It is essentially defendant's position that to prohibit the sale of a tablet with 1/8 of a grain of codeine and at the same time exempt the sale of cough syrup containing as much as 1/6 of a grain of codeine per teaspoon results in an arbitrary and unreasonable classification. The state, on the other hand, argues that the classification is proper because (1) liquid cough syrup is more difficult to conceal than tablets; (2) its cost would be prohibitive if available only by prescription; and (3) the benefit and convenience to the public in securing cough syrup over the counter outweigh the potential dangers inherent in permitting its purchase without a prescription.

With respect to the test to be applied in considering the propriety of a legislative classification, we have recently held (Fabio v. City of St. Paul, 267 Minn. 273, 277, 126 N. W. [2d] 259, 262):

"In deciding whether classification in a given situation offends constitutional principles, the rules of construction generally governing legislation

are relevant. In this area there is a growing judicial tendency to permit the exercise of broad discretion. The fact that measures taken are not directed at all of the evils to be corrected does not invalidate the application of the statute if the problem is dealt with according to practical exigencies and experience in a manner which is germane to its solution." [2]

For the reasons advanced by the state, we are of the opinion the classification is reasonable and the statute therefore valid.

■ We do not regard the failure to appoint counsel at defendant's initial hearing on his petition for a writ of habeas corpus as prejudicial error. The only meritorious issue he raised was the question of whether the information stated a public offense, and defendant was ably represented by counsel at the remanded hearing on that matter.

■ We have considered defendant's claim that he had ineffective counsel at the time of his conviction and hold that this contention is not supported by the record.

Affirmed.

---

[2] State v. Donaldson, 41 Minn. 74, 78, 42 N. W. 781, 782; Dimke v. Finke, 209 Minn. 29, 33, 295 N. W. 75, 78; Anderson v. City of St. Paul, 226 Minn. 186, 195, 32 N. W. (2d) 538, 543.