## STATE v. ANTHONY G. DeGIDIO.

152 N. W. (2d) 179.

July 14, 1967—No. 39,683.

*Donald E. Wiese,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

Defendant appeals from a conviction for uttering a forged prescription and using a false name in order to obtain narcotic drugs in violation of Minn. St. 618.18.

No evidence was submitted by the defendant. He discharged his first attorney, which prompted the court to declare a mistrial. The public defender was thereupon appointed and defendant waived a jury trial. He was then tried and found guilty by the court. The testimony of plaintiff's witnesses permitted the court to find that on October 23, 1963, the defendant presented to one Stephen Kachina, a pharmacist at 4201 Webber Parkway in North Minneapolis, a prescription for 35 Percodan tablets (misspelled "Percoden") which purported to be authorized by Dr. W. H. Rucker. The prescription did not identify or give the address of the patient. The defendant supplied the name "Anthony Titino," whose address he gave as 5133 Girard Avenue North. However, the druggist did not claim that defendant represented himself as being Titino. Because of the suspicious circumstances the druggist attempted to reach Dr. Rucker and did determine that no one by the name of Titino was his patient and that he had not signed this particular prescription. The druggist thereupon called the police who arrested defendant in the drugstore. At the trial there was testimony that no one by the name of Titino or DeGidio had ever lived at 5133 Girard Avenue.

Defendant was taken from the drugstore to a squad car from which he shortly escaped when the officers were distracted while interrogating defendant's wife who was present in another automobile.

■ Dr. Rucker did not take the stand. However, his nurse testified that the signature on the prescription was not that of the doctor and that he had no patient by the name of Titino. A check bearing the name of

Dr. Rucker was introduced and identified by the nurse as being a sample of the doctor's actual signature. Defendant claims that this testimony was in violation of the best-evidence rule. In our opinion defendant misconceives the scope of that rule. It simply prohibits the introduction of secondary evidence to establish the contents of a writing where the writing itself is available.[1] The fact that the doctor did not testify bears only on the weight of the evidence and does not render the nurse's testimony inadmissible.[2]

■ Defendant denies that percodan is a narcotic drug within the meaning of Minn. St. 618.18, which makes it a felony to utter a forged prescription or give a false name,[3] and urges that the matter be remanded for a determination of that fact in the manner directed in State ex rel. Flores v. Tahash, 272 Minn. 451, 138 N. W. (2d) 626. Section 618.01, subd. 13, defines opium as including morphine and codeine, and subd. 14 specifies that opium is a narcotic drug. The record on appeal includes directives of the Treasury Department, Bureau of Narcotics, which show that percodan is the trade name for dihydrohydroxycodeinone and that this compound is a derivative of morphine. In addition, there was medical testimony at the trial that percodan contained codeine and was a narcotic drug. On this record we hold there was competent evidence to find that percodan was a narcotic drug within the meaning of the statute.

■ It is the contention of defendant that he was incompetent to stand trial and was incapable of effectively participating in his own defense. Because of the many continuances that were granted defendant at his own request, the trial did not commence until March 23, 1964, prior to

---

[1] McCormick, Evidence, § 196.

[2] Johnson v. Burmeister, 182 Minn. 385, 234 N. W. 590.

[3] Minn. St. 618.18 provides in part: "No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written order; or (c) by the concealment of a material fact; or (d) by the use of a false name or the giving of a false address;

\* \* \* \* \*

"No person shall make or utter any false or forged prescription or false or forged written order."

which date he had been in custody for about 4 months. Defendant admitted being a drug addict and assigned his addiction as a ground for further delaying his trial. The court conducted its own pretrial examination of defendant to determine the defendant's capacity to stand trial. Although the court stated that in his opinion defendant was perfectly competent mentally, defendant was referred to the Department of Court Services for psychiatric and psychological examination and evaluation. After 3 weeks the court was furnished with a psychiatric report which showed that defendant was capable of participating in his own defense and was not psychotic. On the basis of the court's own observations and the medical examination which was furnished, and in the absence of any contrary evidence apart from the testimony of defendant himself, we hold that there is no merit in defendant's contention that he was entitled to a further delay in the prosecution of this charge.

■ A somewhat more troublesome assignment of error is the question of whether the state has sustained its burden of proving fraudulent intent. Defendant argues that if, as he claims, the prescription was given to him by a third person and defendant was simply performing a service for a friend without knowing that it was not genuine, defendant could not under the statute be found guilty. The issue then is whether there was sufficient circumstantial evidence to support a finding that defendant had knowledge of the forgery. We hold that there was. In this conclusion we find support in Hill v. State (Okla. Cr.) 266 P. (2d) 979. There under very similar circumstances the Oklahoma court held (266 P. [2d] 982):

"We think the circumstantial evidence was entirely sufficient to sustain the conviction. The proof showed defendant in possession of the forged prescription. He presented it to the druggist to be filled. A strong circumstance indicating his knowledge of the false character of the prescription was the fact that when the druggist refused to fill the prescription and walked to the telephone for the purpose of calling the officers, the accused fled from the store."

Although the state has the burden of proving intent, and defendant's silence is not a circumstance which the court can consider in weighing his guilt or innocence, the fact that no evidence was introduced to rebut the incriminating testimony to which we have referred points strongly to

defendant's guilt. Defendant was himself addicted and presented a pharmacist with a prescription for narcotics in an amount which was described in the testimony as a "high" number of tablets. The signature of the doctor was forged and the person named in the prescription was not his patient nor was the patient's address genuine. After being taken into custody the defendant escaped from the police. Under these circumstances we hold that the trial court was justified in finding that defendant had knowledge of the fraud in presenting the prescription. The conviction is therefore affirmed.

Affirmed.