ANTHONY DeGIDIO v. STATE.

200 N. W. 2d 898.

September 1, 1972—No. 42790.

C. *Paul Jones,* State Public Defender, and *George W. Flynn,* Special Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Todd, and Mason, JJ.

PER CURIAM.

Appeal from a dismissal on procedural grounds of a postconviction application.

Petitioner filed a pro se petition for postconviction relief alleging, pertinent to this appeal, that the Youth Conservation Commission (YCC), to whose custody he was committed at age 20 upon his conviction for a violation of our Uniform Narcotic Drug Act, violated his statutory and due process rights when it failed to discharge him upon his reaching his twenty-fifth birthday. After consideration of the record submitted in support and opposition to the petition, the postconviction court, without an evidentiary hearing, dismissed the petition. Subsequently, it denied a motion to reopen the proceeding. We affirm.

In 1964, petitioner was found guilty of uttering a forged prescription to obtain narcotic drugs in violation of Minn. St. 1969, § 618.18, and was sentenced to the custody of the YCC for the maximum indeterminate term of 20 years. At the time of his sentence petitioner was 20 years old. Upon his direct appeal to this court, his conviction was affirmed. State v. DeGidio, 277 Minn. 218, 152 N. W. 2d 179 (1967). He remained in the reformatory at St. Cloud, where he was ordered confined, until September 1966, when he was transferred to the State Prison at Stillwater. In April 1968, he was paroled. On August 15, 1968, shortly before his twenty-fifth birthday and while he was on parole under YCC supervision, he was ordered transferred to the Adult Corrections Commission (ACC) pursuant to Minn. St. 242.27 upon a finding and determination by the YCC that his discharge "on his twenty-fifth birthday" would be "dangerous to the public." No written notice of the YCC's finding and order has ever been served upon petitioner, nor has he requested a hearing for a review of the order before the commission. He first became aware of the commission's action through his parole agent. He remained on parole until December 1968, at which time he pled guilty to a charge of attempted burglary and was sentenced to serve a 2½-year term of imprisonment concurrently with his prior 20-year sentence. His parole was revoked and he was recommitted to the prison.[1]

In May 1970, he filed a pro se application for postconviction relief seeking discharge from his 20-year sentence, alleging among other grounds, the YCC's failure to comply with statutory procedures in continuing his confinement and ordering transfer to the ACC. The trial court summarily dismissed the petition without hearing on July 24, 1970. Thereafter, the public defender moved on petitioner's behalf that the proceeding be reopened. The court, after a hearing at which counsel

---

[1] In June 1971, he was paroled, but in December 1971, he was convicted of two counts of drug offenses and was ordered confined for treatment as an addict.

presented arguments but did not introduce testimony, again ordered the petition dismissed. Both orders were accompanied by memoranda of the trial judge explaining that the administrative action of the YCC was not intended to be reviewed in a postconviction proceeding and that the court was without "jurisdiction" to reach the merits of petitioner's claim. Petitioner appeals from both orders of the postconviction court.

Petitioner contends that the YCC's failure to give him notice of its findings and order not to discharge him on his twenty-fifth birthday violated both his statutory rights and constitutional due process rights. The state contends that the alleged failure of the YCC to comply with statutory provisions pertaining to discharge and transfer of custody are not reviewable under our postconviction procedure act. Minn. St. 590.01, et seq.[2] Apart from the issue of the scope of the remedy intended to be afforded by our postconviction act—sought to be raised by the parties and upon which we express no opinion—we hold that the postconviction court justifiably dismissed the petition for the relief requested because of petitioner's failure to exhaust available and adequate administrative remedies.

The relevant statutory scheme of the Youth Conservation Act is to provide a complete program "looking toward the prevention of juvenile and youth delinquency and to provide and administer preventive and corrective training for persons committed to the commission." § 242.02. A person convicted of a felony and committed to the custody of the YCC remains subject to its control until age 25 unless he is sooner discharged by expiration of his sentence or action of the commission. Recognizing limitations for corrective treatment of youthful offenders, § 242.265 of the act empowers the YCC to transfer control to the ACC of any person who has attained age 21 and who thereafter is convicted of a felony committed while on probation or parole or who is confined in a correctional institution by reason of a violation of parole. This transfer may be made without any formal determination that the person's release is dangerous to society. Section 242.27 provides that unless the person in the custody of the YCC is previously discharged or transferred to the ACC, he shall be discharged and be given his liberty on his twenty-fifth birthday regardless of the remaining term of his sentence unless the commission "shall determine that such discharge at

---

[2] The state suggests that either mandamus or certiorari or habeas corpus would be the appropriate procedure for a judicial review of the merits of petitioner's claims.

that time would be dangerous to the public." In that event, if the defendant is on parole from the YCC, control shall be transferred to the ACC, which is thereupon directed to assume control over him as though he were on parole to the ACC following sentence of a court to a maximum term for the "crime for which he was committed." Although there appears no specific provisions requiring the commission to issue an order of termination and transfer, § 242.36,[3] by clear implication, requires that a written order be issued and notice thereof be given to the defendant. That section provides that, within 30 days from the date of such notice of an order of termination and transfer, the defendant "may request the commission in writing to conduct a hearing of record for the review of any such order." It further provides that if the commission grants the request, it must hold a full hearing with counsel, right of confrontation, and right of cross-examination to the defendant, and thereupon the commission shall affirm, modify, or rescind the order. This order would then become final, as would an order summarily denying a request for a hearing, in which event the section grants to defendant of right a review by the committing court within 30 days

[3] Minn. St. 242.36 provides: "(1) Within 30 days from the date of notice in writing of any order made pursuant to section 242.10, clause (1), or section 242.19, or of any order terminating its control made pursuant to section 242.27 after an examination as therein provided, any person who has been committed to the commission after conviction of a felony or gross misdemeanor, may request the commission in writing to conduct a hearing of record for the review of any such order.

"(2)  If the commission grants the request, it shall hold a full hearing of record, allowing the person opportunity to appear with counsel, and thereafter the commission shall issue a final order affirming, modifying, or rescinding its prior order.

"(3)  Upon application to the committing district court made by the person affected by the final order within 30 days from the date of written notice thereof, the committing district court only may review such final order. Such review shall be in like manner as though reviewed by certiorari, except that the trial shall be de novo upon the return of the commission and such other evidence as may be received by the court. Nothing herein shall prohibit the commission from making such investigation and orders to carry out the purposes of Minnesota Statutes, Chapter 242.

"(4)  The final order shall remain in full force and effect until reversed by the committing district court, and if appeal is taken to the supreme court, until that court makes its final order."

from notice of the commission's action. The review by the court is like that accorded a matter reviewed by certiorari except that "the trial shall be de novo upon the return of the commission and such other evidence as may be received by the court." Defendant may appeal any adverse decision of the district court to the supreme court.

As demonstrated, our statutory scheme provides an explicit, complete, and comprehensive remedy, embodying all the essentials of due process, for any person under YCC custody whom the commission fails to discharge on his twenty-fifth birthday upon a finding that his discharge at that time would be "dangerous to the public."[4] Defendant has not pursued this statutory remedy available to him. Since he has not been given the required notice of the YCC action, even though it was taken in 1968, the 30-day period in which he had a right to request a hearing before the commission has not begun to run. That is not to say that he need await such notice before requesting a hearing. If a request is made and the commission grants a hearing, the issue before it will include the fact question of whether or not petitioner's discharge on his twenty-fifth birthday would have been dangerous to the public. Evidence of his subsequent conduct must, under fundamental principles of our adversary system of fact finding, be regarded as immaterial and knowledge thereof disregarded by the commission.

Our disposition is dictated by our obligation to advance the legislative policy of placing upon the YCC the duty and responsibility to exert every effort and use every available means to treat and rehabilitate juvenile offenders before their twenty-fifth birthday. The legislature recognized that the methods which can be employed by the commission are much broader and more flexible than those available to a committing court, as is most strikingly indicated by the provision in the Youth Conservation Act which imposes upon a committing court a duty to sentence a juvenile to the maximum term provided by law.[5] To permit premature judicial review of the commission's action in refusing to discharge one committed to its custody on his twenty-fifth birthday

---

[4] The procedure provided appears to be wholly consistent with the requirement of constitutional due process which arises where the commission, by refusing to grant a hearing before it or to discharge a person under custody, extends state control over him based upon a factual determination that his release would be dangerous to the public. See, Specht v. Patterson, 386 U. S. 605, 87 S. Ct. 1209, 18 L. ed. 2d 326 (1967); Mempa v. Rhay, 389 U. S. 128, 88 S. Ct. 254, 19 L. ed. 2d 336 (1967).

[5] Minn. St. 242.13.

would frustrate the underlying legislative policy and objectives of the act.

Affirmed.

MR. JUSTICE MacLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.