William James **VEZINA**, Petitioner, Appellant,

v.

**STATE of Minnesota and the Minnesota Corrections Board, Respondent.**

No. 49357.

Supreme Court of Minnesota.

Aug. 24, 1979.

C. Paul Jones, Public Defender, and J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and David L. Valentini, Sp. Asst. Attys. Gen., St. Paul, William B. Randall, County Atty., St. Paul, for respondent.

TODD, Justice.

Appellant was sentenced to an indeterminate term not to exceed 10 years. Execution of sentence was stayed and probation was granted on the conditions that appellant serve 1 year in the county workhouse and complete a drug treatment program. While incarcerated in the workhouse, appellant was transferred from youthful offender status to adult status. Thereafter, the conditions of probation were violated and appellant was incarcerated in the state prison. Appellant brought this action under the Postconviction Remedy Act, challenging his transfer from youthful offender status to adult status and challenging the failure of the corrections board to credit his time spent in the county workhouse against his target date for release on parole. The state challenges the use of the Postconviction Remedy Act to review the transfer from

youthful offender status. The district court, on the merits, denied appellant's petition for relief. We affirm.

In June 1976, appellant entered a plea of guilty to the crime of burglary with possession of a tool under Minn.St. 609.58, subd. 2(1)(a). In July 1976, appellant was sentenced to an indeterminate term not to exceed 10 years, to be served concurrently with other sentences he was serving. However, execution of sentence was stayed and probation granted on the condition that appellant serve 1 year in the Ramsey County Workhouse and that he successfully complete a drug treatment program at the Eden House.

During his confinement at the workhouse in February 1977, appellant received a letter from the Minnesota Board of Corrections informing him that he would be transferred from youthful offender status to adult status on his twenty-fifth birthday.[1] The letter informed appellant of his right to a hearing on the transfer if requested within 30 days. No timely request was made by appellant.

After his 1 year of confinement in the workhouse, appellant was released and sent to the Eden House for treatment. Without permission or authority, appellant left Eden House several hours after he arrived and did not return. Thereafter, probation was revoked and the stay of execution on the 10-year indeterminate sentence was vacated.

In August 1977, appellant was sent to the Minnesota State Prison pursuant to the sentence. The Minnesota Corrections Board reviewed his case, and using a matrix system for parole eligibility, established that appellant must serve 59 months in prison before being eligible for parole. This determination was based on 53 months for appel-

lant's criminal activity, plus 6 months for the probation violation. However, appellant was also given credit against this 59-month period for the 76 days which he spent in detention between the time of his arrest and the time of his conviction.

Although appellant did receive credit for the 1 year spent in the workhouse, this time was subtracted from the 10-year maximum rather than the 59-month period for parole eligibility. Thus, appellant's maximum time for incarceration was shortened to 9 years, but the time for his parole eligibility was not shortened by the workhouse term.

In May 1978, appellant petitioned the district court for postconviction relief, arguing that he was denied his right to a hearing on the transfer from youthful offender status to adult status, and that the 1 year spent in the workhouse should be credited against his 59-month term for parole eligibility. The district court denied appellant's petition for relief, and this appeal followed.

The issues presented are:

(1) May the Postconviction Remedy Act be used to challenge the decision of the Minnesota Corrections Board concerning transfer from youthful offender status to adult status?

(2) Did appellant waive his right to a hearing on the transfer from youthful offender status to adult status by not requesting a hearing within 30 days after receiving notice of the transfer?

(3) Did the Minnesota Corrections Board err in not crediting the 1 year served in the workhouse against the target date for release on parole?

■ 1. The state argues that the decision of the corrections board concerning appellant's transfer from youthful offender status to adult status may not be chal-

---

1. The Youth Conservation Commission (YCC) had jurisdiction over youthful offenders through their twenty-fifth birthdays. Provisions for transfer from youthful offender status at the YCC to adult status at the Adult Corrections Commission (ACC) were contained in Minn.St.1976, § 242.27.

The YCC was abolished in 1973 along with its counterpart for adult offenders, the ACC,

and the duties of both bodies were assigned to the Minnesota Corrections Board (MCB). See, L.1973, c. 654. In 1977, the legislature repealed the remaining provisions of the former Youth Conservation Act, which set forth the procedure for discharging youthful offenders or transferring them to adult status. See, L.1977, c. 392, § 14.

lenged under the Postconviction Remedy Act. The state argues that the challenge should instead have been made pursuant to a habeas corpus proceeding. The trial court made no ruling on this argument because the issue was not previously raised by the state.

In our recent decision of *Kelsey v. State,* 283 N.W.2d 892 (Minn.1979), we held that the Postconviction Remedy Act was not available to obtain judicial review of a decision by the corrections board concerning parole. We held, further, that habeas corpus was the proper means of obtaining review on such decisions. Consistent with *Kelsey,* we hold that the Postconviction Remedy Act is not available to review the transfer from youthful offender status to adult status. The decision concerning such a transfer is similar to a decision concerning parole insofar as both are administrative decisions by the corrections board, and, therefore, not presently encompassed by the Postconviction Remedy Act. See, also, *Rongitsch v. State,* 289 N.W.2d 413 (Minn. 1979), filed herewith.

Although the Postconviction Remedy Act does not apply, we will afford discretionary review and consider the merits of this appeal in the interests of justice, particularly because the state made no objection to the procedural infirmity until the time of this appeal. See, Rule 105, Rules of Civil Appellate Procedure. See, also, Rule 29.02, subd. 3, Rules of Criminal Procedure.

■ 2. Appellant argues that he did not knowingly and voluntarily waive his right to a hearing on the transfer from youthful offender status to adult status. We reject this argument.

The provisions for requesting a transfer hearing, repealed in 1977,[2] were contained in Minn.St.1976, § 242.36. The statute provided that within 30 days from the notice of transfer the person transferred had to make a written request for a hearing. Pursuant to this provision, the board notified the appellant of his transfer and advised him as follows:

" * * * Notice is hereby given, pursuant to Minnesota Statutes 242.36, that you may appeal this order within thirty (30) days of receipt by you of this order. The appeal must be in writing with reasons. If the Authority grants your request, it shall hold a full hearing of record, allowing you the opportunity to appear with an attorney. You may retain a private lawyer or apply to the State Public Defender or L.A.M.P. for legal assistance."

Appellant did not respond to this notice. He alleges that this failure to respond did not constitute a waiver of the hearing.

This court, in *DeGidio v. State,* 294 Minn. 521, 200 N.W.2d 898 (1972), reviewed the statutory procedures relating to discharge of youthful offenders. This court said (294 Minn. 525, 200 N.W.2d 900):

" * * * [O]ur statutory scheme provides an explicit, complete, and comprehensive remedy, embodying all the essentials of due process, for any person under YCC custody whom the commission fails to discharge on his twenty-fifth birthday upon a finding that his discharge at that time would be 'dangerous to the public.' "

Appellant does not argue that the statute fails to satisfy due process. Instead, he argues that the form of the letter sent by the board failed to disclose fully the precise review procedures and the precise scope of appellant's rights, thereby precluding a clear understanding of the hearing procedure. The trial court concluded that the board's form of notice was sufficiently clear to provide appellant with an understanding of the right to a hearing. We agree, and hold that appellant is deemed to have waived the right to a hearing.

■ 3. Appellant's final contention is that he is entitled to credit for the year he was confined in the workhouse, while on probation, against the target date for his parole eligibility. The state argues that the year in the workhouse should only be credited against the "back end" of the appellant's maximum sentence rather than the target release date.

**2.** L.1977, c. 392, § 14. See, also, note 1, *supra.*

The leading Minnesota case concerning credit for probation time against a sentence is *State ex rel. Ahern v. Young,* 273 Minn. 240, 141 N.W.2d 15 (1966). In that case, we denied credit for the time served on probation, relying on various statutes evincing a legislative intent to deny credit for time served on probation. We set forth these policy reasons for denying such credit (273 Minn. 247, 141 N.W.2d 20):

" * * * [I]f credit were required to be given, it is foreseeable that a sentencing court would be less inclined to impose the risks of probation upon society, knowing that such concessions might hinder communicating to the defendant the full impact of responsibility for his acts and, possibly, frustrate rehabilitation. The effect upon a probationer could well be less respect for the restraints of probation and obedience to the law, with increased danger of recidivism. *It is essential that a court should retain the threat of the original sentence upon breach of probation in order more effectively to discipline a probationer and protect against the risk of repeated injury to society.*" (Italics supplied.)

The *Ahern* decision has been followed consistently by this court. See, *State v. Loveland,* 307 Minn. 519, 240 N.W.2d 326 (1976); *State ex rel. Sargent v. Tahash,* 280 Minn. 507, 160 N.W.2d 139 (1968); *State ex rel. Lillemoe v. Tahash,* 280 Minn. 176, 159 N.W.2d 99 (1968). Appellant's arguments concerning equal protection, due process, and double jeopardy have also been rejected by these and other decisions. See, *United States v. Shead,* 568 F.2d 678 (10 Cir. 1978); *Hall v. Bostic,* 529 F.2d 990 (4 Cir. 1975), certiorari denied, 425 U.S. 954, 96 S.Ct. 1733, 48 L.Ed.2d 199 (1976).

Consistent with these principles, we hold that appellant is not entitled to credit for the time served in the workhouse against the sentence which must be served for parole eligibility. The policy evinced by the legislature and set forth in this court's decisions compels the conclusion that the time for parole eligibility is not reduced by time served in the workhouse during probation.

The conditions of probation, in the event of their breach, should have the sanction of full-length incarceration.

Affirmed.

WAHL, Justice (concurring in part, dissenting in part).

This case was brought under the Postconviction Remedy Act and, I would hold, properly so. Such review is in accord with the following statement of purpose set forth in the Prefatory Note to the Uniform Postconviction Procedure Act, 11 Uniform Laws Annotated 483:

"Section 1(b) of the Act makes the remedy provided a substitute for all common law-statutory or other remedies heretofore available for challenging the conviction or sentence (other than direct review). A state should consider repealing its existing statutes on habeas corpus, coram nobis and statutory remedies, if any. Whether these are repealed or not, the direction in section 1(b) would seem to require a court to treat an application under such a remedy as made under this Act and governed by its provisions as to pleadings and procedure."

Furthermore, appellant's transfer from youthful offender status to adult status may affect the length of appellant's incarceration, and therefore the transfer does concern appellant's "sentence or other disposition" within the meaning of Minn.St. 590.01, subd. 1. Although the act would therefore be applicable to challenge the decision of the Minnesota Corrections Board, this does not mean that any decision made by the board will be reviewable under the act absent legislative action. *Kelsey v. State,* 283 N.W.2d 892 (Minn.1979) filed August 3, 1979.

I agree that appellant waived his right to a hearing on the transfer from youthful offender status to adult status, but I cannot agree that the year appellant served in the Ramsey County Workhouse as a condition of probation should not be credited against the target date for release on parole. A year in the county workhouse is not the "mild form of ambulatory punishment" that

was offered as a characterization of probation in *State ex rel. Ahern v. Young,* 273 Minn. 240, 247, 141 N.W.2d 15, 19 (1966). Time served is time served. This was hard time, and it should be credited against appellant's target release date.

OTIS, Justice (dissenting in part).

To characterize a year's confinement in the workhouse as "probation" is a euphemism totally unrelated to reality. To deprive a prisoner of a year of his freedom is imposing punishment by any definition of that word.