**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sorel SHEAD, Defendant-Appellant.**

**No. 77–1100.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 18, 1977.

Decided Jan. 3, 1978.

revoked pursuant to 18 U.S.C. § 3653 (1970) and he was ordered to serve two years imprisonment, although credit to a parolee for time while on parole before revocation would be required by 18 U.S.C. § 4210 and related regulations, 28 C.F.R. § 2.52(c)(2) (July 1, 1976).

I

Shead was convicted on September 16, 1974, of uttering and publishing a Treasury check with a forged endorsement in violation of 18 U.S.C. § 495. He was sentenced on October 11, 1974, to three years imprisonment. Pursuant to the sentencing procedures permitted by 18 U.S.C. § 3651, the district court imposed a three-year sentence and ordered that Shead be confined in a treatment-type institution for six months, that the execution of the remainder of the sentence be suspended, that Shead be placed on probation for a period of two years and six months, and that during the period of probation Shead participate in a drug abuse treatment program as directed by the Probation Officer. (II R. 8).

After the six months confinement in the treatment institution, probation commenced on March 4, 1975, subject to the special conditions ordered by the court, namely, that Shead participate in a drug abuse treatment program as directed by the Probation Officer. (II R. 9). On November 17, 1975, the court found that Shead's adjustment on probation had not been entirely satisfactory and amended its original Order of Probation, adding the special condition that Shead reside and participate in a community treatment center program as designated by the Probation Department. (II R. 10).

H. V. Ellwood, Denver, Colo., for defendant-appellant.

Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before HOLLOWAY and DOYLE, Circuit Judges, and ROGERS, District Judge.*

HOLLOWAY, Circuit Judge.

The issue before us is whether there was a violation of equal protection principles inherent in Fifth Amendment Due Process by the refusal of the district court to give credit to defendant Shead for time he had been on probation when his probation was

The first of three probation violation warrants was issued on May 6, 1976. After a hearing, the court found that the terms of probation had been violated and revoked its previous probation order. On May 28, 1976, the court continued probation subject to all the special conditions of its previous probation order, including specifically the re-

---

* The Honorable Richard D. Rogers of the District of Kansas, sitting by designation.

quirement that Shead reside and participate in a community treatment center for drug abuse. (II R. 11–13).

On July 14, 1976, a second probation violation warrant was issued. But on August 2, 1976, the court ordered that the parole violation warrant be withdrawn and that Shead be continued on probation with all the special conditions to remain in full force and effect. (II R. 14–15).

The third and final probation violation warrant issued on August 27, 1976. Shead remained at large until he turned himself in on November 3, 1976. A hearing on the third violation was held on December 2, 1976. (I R. 1; II R. 17). The court read the third probation violation report in open court, stating the matters set out below. After these allegations were read, defendant's attorney stated that the defendant stipulated as to the substantial correctness of the violations, but that the defendant wished to present testimony as to matters in explanation and mitigation of the violations. The violations which the defendant thus stipulated to be substantially correct were as follows:

The report as read by the judge charged that defendant had violated the conditions of his probation in that he failed to participate in the drug treatment program as directed by the probation officer; that he failed to submit urine samples as instructed; that the urine samples he did submit indicated that he had returned to the use of narcotics; that in August he left the residential drug treatment program; and that since that time he had failed to report to the United States Probation Officer in Denver and did not submit written reports. (I R. 4–5).

At the hearing the defendant's evidence in explanation and mitigation was essentially that defendant's wife had surgery for cancer in August, 1976; defendant was taking care of their two young children; more surgery was to be scheduled and the defendant was needed at home; defendant had made a great effort to deal with his drug problem; he was only an occasional or week-end user of drugs; he was able to attend school and hold a job; and he had made financial contributions to the family.

A medical witness also described the difficulty and time required on methadone maintenance programs, which defendant was undergoing; that defendant was motivated to try to succeed in cure of his drug problem; and a lay witness also testified to defendant's good faith effort in that regard. Defendant testified about paralegal training he was in, his work in a family business firm, and his intention of continuing constructive efforts in these directions and for cure of his drug problem.

At the conclusion of the hearing, the court revoked its previous Order of Probation and sentenced Shead to two years imprisonment with the recommendation that Shead be confined in an institution with a meaningful drug abuse program and that he be allowed to participate in such an in-depth program. (I R. 18; II R. 33, 36). Although the court did reduce Shead's sentence from a maximum of two years and six months to two years (II R. 18), (he had served six months in a treatment type institution on his original three-year sentence), it did not give him credit against his sentence for time served while he was on probation.

Shead filed a motion to reconsider his sentence. He claimed essentially that the interests of justice, society and of the defendant would be served if his sentence were reduced, that a two-year sentence would serve no rehabilitative purpose, that such a sentence would cause defendant's family an undue hardship. Alternatively defendant requested correction of an illegal sentence, claiming that the sentence did not give defendant credit for time spent on probation in violation of equal protection implicit in the Fifth Amendment, pointing out that federal parole violators are given credit for time spent on parole and that no rational basis supports the distinction. (II R. 19–20).

The district court entered an order denying the motion to reduce the sentence, stating (II R. 21–22):

Defendant, through his counsel, has filed a motion to correct or reconsider sentence. The sentence imposed by the Court was a very moderate one and within the limits prescribed by law and it is entirely valid and just; therefore no 'correction' is indicated.

The Court file and the pre-sentence report reveal that the defendant was placed on probation by this Court on October 1, 1974; one of the conditions of probation was that defendant participate in a drug treatment program as directed by the probation officer. This defendant failed to do satisfactorily and on November 17, 1975, the probation order was amended to require that the defendant reside and participate in a community treatment center program. He again failed to perform satisfactorily and on May 6, 1976 a probation violation warrant was issued against defendant; on June 1, 1976 defendant's probation was reinstated. He continued to violate his probation order and a second violation warrant was issued on July 8, 1976; again and on August 2, 1976, his probation was reinstated. A third probation violation warrant was issued on August 26, 1976, and although defendant knew that such a probation violation warrant was out-

standing, he avoided apprehension for some time. On December 2, 1976, the Court held a probation violation hearing and found that the defendant had again violated the terms and conditions of his probation order.

The Court gave defendant every reasonable opportunity to remain out of an institution and defendant totally failed to cooperate with the Court and its probation department.

No valid reason has been called to the Court's attention which would support this requested modification of sentence.

From this order defendant appeals, presenting only his equal protection claim.

## II

■ Defendant Shead contends that the failure of the district court to give him credit against his sentence for the time he served while on probation violated equal protection principles inherent in the Due Process Clause of the Fifth Amendment, see *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514, since the United States Parole Commission is required (with exceptions that appear in the statute and regulations as quoted in the margin) under 18 U.S.C. § 4210 [1] and the

1. 18 U.S.C.A. § 4210 provides in pertinent part: (b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—

   \*    \*    \*    \*    \*    \*

(2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

(c) In the case of any parolee found to have intentionally refused or failed to respond to any reasonable request, order, summons, or warrant of the Commission or any member or agent thereof, the jurisdiction of the Commission may be extended for the period during which the parolee so refused or failed to respond.

Under the former parole revocation statutes, 18 U.S.C. §§ 4205, 4207 (1970), a prisoner retaken upon a warrant issued by the Board of Parole, was specifically denied credit for the time spent on parole against the time for which he was sentenced. See, *e. g., Anderson v. Corall,* 263 U.S. 193, 196–97, 44 S.Ct. 43, 68 L.Ed. 247; cf. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484. Under these former statutes, we held that the statutory refusal to count time spent on parole when sentence resumed did not violate due process, *Weathers v. Willingham,* 356 F.2d 421, 422 (10th Cir.), or equal protection to the parolee who behaved for the longest period of time while he was on parole. *Firkins v. State of Colorado,* 434 F.2d 1232, 1234 (10th Cir.). The

implementing regulations, particularly 28 C.F.R. § 2.52(c)(2) (1976)[2], to give such credit to an individual whose parole is revoked. See also 2 U.S.Code Cong. and Admin.News, pp. 353, 364 (1976).

More specifically, defendant Shead's arguments are that equal protection principles are applicable to the Government as a part of Fifth Amendment Due Process, *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; that an unconstitutional discrimination between probationers and parolees has been created by the 1976 statutory revisions appearing in 18 U.S.C. § 4210; that the purpose of both probation and parole is rehabilitation, *Alvarado v. McLaughlin*, 486 F.2d 541, 545 (4th Cir.); that the Supreme Court found no rational basis for distinguishing between probationers and parolees in applying due process principles, *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656; and that since probationers are generally younger, unhardened offenders and less likely to have a significant prior criminal record than parolees, there is no rational basis for a harsher rule for probationers than parolees on the credit for time spent under supervision.

We must agree that these arguments have some force, particularly those stressing the similar purposes of the probation and parole systems. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, and *Gagnon v. Scarpelli*, 411 U.S. 778, 93

S.Ct. 1756, 36 L.Ed.2d 656, held respectively that before parole or probation could be revoked, preliminary and final hearings were required by the Due Process Clause. In following the *Morrissey* holding, *Gagnon* pointed to the parallel purposes of parole and probation, id. at 783–84, 93 S.Ct. 1756, and the function of both the probation and parole officer was described as supervision of "a course of rehabilitation." See also *Roberts v. United States*, 320 U.S. 264, 272, 64 S.Ct. 113, 88 L.Ed. 41; *United States v. Murray*, 275 U.S. 347, 355–58, 48 S.Ct. 146, 72 L.Ed. 309. In *Gagnon* the Court stated, 411 U.S. 782, 93 S.Ct. 1759 n. 3:

[3] Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinquishable from the revocation of parole. . . .[3]

These observations weaken the Government's argument that there is a contrast in purposes between the two systems, with probation focusing on rehabilitation and parole on the underlying purpose of punishment. (Brief of Appellee, 8–9). It is true that parole has been described as imprisonment in legal effect, albeit in an ameliorated form. *United States v. O'Brien*, 273 F.2d 495, 498 (3d Cir.). Nevertheless, parole has an undeniable basic purpose of rehabilitation as recognized earlier in

allowance of credit for time served on parole under the Parole Commission and Reorganization Act, Pub.L. 94–233 (1976), represents a change in the law. See 41 Fed.Reg. 19326 (5/12/76).

2. 28 C.F.R. § 2.52(c) (July 1, 1976) provides: (c) *A parolee whose release is revoked by the Commission will receive credit on service of his sentence for time spent under supervision, except as provided below:*
(1) If the Commission finds that such parolee intentionally refused or failed to respond to any reasonable request, order, summons or warrant of the Commission or any agent thereof, the Commission may order the forfeiture of the time during which the parolee so refused or failed to respond, and such time shall not be credited to service of the sentence.
(2) If the parolee has been convicted of a new offense committed subsequent to his re-

lease on parole, which is punishable by a term of imprisonment, the Commission may order the forfeiture of the time from the date of the parolee's original release to the date of execution of the warrant and such time shall not be credited to service of the sentence. An actual term of confinement or imprisonment need not have been imposed for such conviction; it suffices that the statute under which the parolee was convicted permits the trial court to impose any term of confinement or imprisonment in any penal facility. However, in no event shall the violator term imposed under this subsection, taken together with the time served before release, exceed the total length of the original sentence. (Emphasis added).

3. As noted, defendant Shead's sentence had been previously imposed, shortly after his conviction in 1974.

*Zerbst v. Kidwell,* 304 U.S. 359, 363, 58 S.Ct. 872, 82 L.Ed. 1399, and more recently in *Morrissey* and *Gagnon.* However, we do not feel the answer to our equal protection question lies in those similarities. Instead we are convinced that the distinctions between the alternatives of probation and parole, authorized for federal trial judges in sentencing offenders, demonstrate a rational basis for the difference with respect to credit for time served before revocation of probation as opposed to parole.

By 18 U.S.C. § 3651, Congress has given the district judges, who have the heavy burden and responsibility of sentencing, alternatives under the probation procedure which afford considerable flexibility—suspending imposition or execution of sentence and placing the defendant on probation; or if the offense is not punishable by death or life imprisonment but by a maximum punishment of more than six months, then by a sentence of more than six months but providing that the defendant be confined in a jail-type or treatment institution for not over six months, with execution of the remainder of the sentence being suspended and the defendant being placed on probation. See 18 U.S.C. § 3651.[4]

As one further part of the trial court's flexible options by probation, on revocation the court may require service of the full sentence imposed, or any lesser sentence, and if imposition of sentence was suspended, may impose any sentence which might originally have been imposed. 18 U.S.C. § 3653 (1970). In support of the option to require service of any full sentence imposed, the Government argues, and we agree, that it was a rational legislative choice for the trial judge to be left free not to give credit for time served before revocation in order that he have the possibility of compelling service of the full sentence confronting the defendant, to best encourage faithful observance of probation conditions. *State v. Young,* 273 Minn. 240, 141 N.W.2d 15, 20. We are persuaded that the reasoning of the Minnesota Court demonstrates a rational basis for the statutory provisions, id. 141 N.W.2d at 20:

. . . Further, if credit were required to be given, it is foreseeable that a sentencing court would be less inclined to impose the risks of probation upon society, knowing that such concessions might hinder communicating to the defendant the full impact of responsibility for his acts and, possibly, frustrate rehabilitation. The effect upon a probationer could well be less respect for the restraints of probation and obedience to the law, with increased danger of recidivism. It is essential that a court should retain the threat of the original sentence upon breach of probation in order more effectively to discipline a probationer and protect against the risk of repeated injury to society.

As probationers and parolees are therefore of different classes, we hold there is no violation of the equal-protection clause.

We feel the legislative choice is further supported by the fact that it is the trial judge who retains general control of probationers and makes decisions on revocation of probation, while it is the Parole Commission which decides on possible revocation of parole. 18 U.S.C. § 4214. While the Commission is given considerable discretion in

---

4. The latter option was chosen by the district court here, with the six months sentence to a treatment-type facility. This choice was undoubtedly made to help the defendant get control over his drug problem while still accomplishing a primary aim of the probation statutes—affording an opportunity to reform and yet to escape the contaminating influence of association with hardened or veteran criminals by regular imprisonment. See *United States v. Murray,* supra, 275 U.S. at 357–58, 48 S.Ct. 146. This decision by the trial judge, and his two later actions restoring defendant to probation after violations, sought to accomplish this objective.

some respects,[5] as we have noted the Congress did not leave it the free choice, given the courts, not to give credit for time spent under supervision when revocation of parole occurs, except in limited circumstances. See 18 U.S.C. § 4210; 28 C.F.R. § 2.52(c). We believe that allowing wider discretion to the sentencing judges controlling probationers than to the administrative agency supervising parolees is not impermissible.

■ The Due Process and Equal Protection Clauses do not command symmetry within the probation and parole systems. Legislative solutions are valid and must be respected if the distinctions drawn have some basis in practical experience or if some legitimate state interest is advanced. *McGinnis v. Royster,* 410 U.S. 263, 276, 93 S.Ct. 1055, 35 L.Ed.2d 282; *South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 15 L.Ed.2d 769. We agree with the similar holding of the Minnesota Court that the differences in treating the credit given for time spent on probation and parole before revocation do not offend equal protection or due process principles. *State v. Young,* supra, 141 N.W.2d at 19–20; *State v. Loveland,* 307 Minn. 519, 240 N.W.2d 326; *State v. Tahash,* 280 Minn. 507, 160 N.W.2d 139.

AFFIRMED.

---

**5.** For example, we note that the Commission may determine whether service of the remaining sentence is to run concurrently with or consecutive to the sentence for a later offense. See 18 U.S.C. §§ 4210(b)(2), 4213; *Moody v. Daggett,* 429 U.S. 78, 85, 97 S.Ct. 274, 50 L.Ed.2d 236.