The People of the State of New York, Respondent, v
Walter Gilmore, Also Known as Gilmore Walter, Ap-
pellant.

Second Department, July 17, 1978

### APPEARANCES OF COUNSEL

*William E. Hellerstein (Judith Preble* of counsel), for appellant.

*Eugene Gold, District Attorney (Steven Menaker* of counsel), for respondent.

### OPINION OF THE COURT

SHAPIRO, J.

■ The question involved on this appeal is whether the defendant, when found guilty of violation of probation, was entitled to jail time credit for the time he was out on the street on probation. We hold that he was not and, therefore, the amended judgment appealed from should be affirmed.

The defendant was indicted in 1970 for manslaughter in the first degree. On May 12, 1971 he pleaded guilty before the late Mr. Justice NICOLS to attempted manslaughter in the second degree in satisfaction of the indictment and was sentenced on December 14, 1971 to a five-year probationary term.

On January 10, 1973 the defendant was arrested on a Federal charge of conspiring to violate the narcotics laws in 1969-1970. On January 18, 1973 he was arrested on a State charge of attempted murder, allegedly committed on October 19, 1972. He was held on the State charge until September 11, 1973 when he was released on his own recognizance because no indictment had been returned. Based on those arrests the defendant was charged with violation of the terms of his probation.

On September 17, 1973 an indictment was filed on the attempted murder charge. On his arraignment on that charge, on September 24, 1973, he was remanded to jail. On June 5, 1975 he pleaded guilty to attempted manslaughter in the first degree in satisfaction of the State indictment and was sentenced on that conviction by Judge D'AMARO to an indeterminate term of five years' imprisonment. At about the same time, the defendant pleaded guilty to the Federal conspiracy charge. The record does not show whether the defendant was sentenced on that charge, but his brief states that the Federal Judge promised that he would receive a prison sentence not exceeding eight years.

On July 30, 1975 the defendant pleaded guilty before Mr. Justice NICOLS to a violation of probation on the basis of his State conviction of attempted manslaughter in the first de-

gree; the Judge resentenced the defendant to an indeterminate seven-year period of imprisonment, to run consecutively to the five-year sentence imposed by Judge D'AMARO. He was not granted jail time credit for street time while he was on probation.

The defendant contends that Mr. Justice NICOLS' denial to him of jail time credit for the time he was on the street while on probation denied him his rights under the equal protection of the laws and the double jeopardy clauses of the Federal and State Constitutions.[1] He predicates his contention on the fact that although persons on probation receive no such statutory credit, persons granted parole or conditional release under section 70.40 of the Penal Law (which can only take place after a period of incarceration) receive such credit. Paragraph (a) of subdivision 1 of section 70.40 provides that a person released on parole "shall continue service of his sentence or sentences while on parole". Paragraph (b) of the same subdivision, governing conditional release, was amended by chapter 148 of the Laws of 1975, effective July 3, 1975, to remove therefrom the restrictions that conditional release interrupted service of the sentence and that the remaining portion of the maximum term was held in abeyance. A defendant upon whom a sentence of probation or conditional discharge is imposed, and who is thereafter resentenced for violation of its terms, receives no jail time credit for the time he was on the street while on probation or conditional discharge since sections 65.00, 65.05 and 65.10 of the Penal Law contain no such crediting provisions.

It is that difference in treatment which is the basis for the defendant's claim that he has been denied the equal protection of the laws. However, it is well settled that such apparently disparate legislative solutions "must be respected if the 'distinctions drawn have some basis in practical experience,' *South Carolina v. Katzenbach,* 383 U.S. 301, 331 (1966), or if some legitimate state interest is advanced, *Dandridge v. Williams,* 397 U.S., at 486. So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying" *(McGinnis v Royster,* 410 US 263, 276). The defendant contends that the restrictions imposed on persons released on probation are exactly the same as those imposed on those released on parole or conditional

---

1. Although advised of the constitutional question involved in this case, the Attorney-General has declined to intervene.

release and, therefore, each involves the same restraints and limitations on liberty and cannot be differentiated for purposes of the applicability of the equal protection clause. But the authorities which discuss probation do not support his claim. Thus, the Federal Circuit Court of Appeals for the Second Circuit, in *Kaplan v Hecht* (24 F2d 664, 665), discussing the purpose of the Federal Probation Act of 1925 (43 US Stat 1259, US Code, tit 18, §§ 724-728), noted that the Supreme Court of the United States had recently declared: "that probation is the attempted saving of a man who has taken one wrong step, and whom the judge thinks can be set again upon the path of rectitude, if an opportunity for reform be given him before he is stigmatized with imprisonment and subjected to association with hardened convicts * * * The purpose is to avoid imprisonment so long as the guilty man gives promise of reform. Clearly, therefore, probation is not intended to be the equivalent of imprisonment. The aim of the statute is reformatory, not punitive, and its language carries this aim into effect. While we have found no decision under the federal Probation Act which passes upon the contention that the prior probation must be credited upon a sentence of imprisonment imposed when probation is revoked, numerous cases under similar state statutes have adjudicated its lack of merit." The difference between probation and parole in terms of the State's goal in creating each and the purpose of each is made even clearer by the discussion of probation by Mr. Justice FRANKFURTER in his dissenting opinion in *Roberts v United States* (320 US 264, 273),[2] in which he said: "The device of probation grew out of a realization that to make the punishment fit the criminal requires wisdom seldom available immediately after conviction. Imposition of sentence at that time is much too often an obligation to exercise caprice, and to make convicted persons serve such a sentence is apt to make law a collaborator in new anti-social consequences. Probation is an experimental device serving both society and the offender. It

2. In *Roberts v United States* (320 US 264), the court dealt with whether, under the Federal Probation Act, a court could, after a violation of probation, revoke the sentence previously imposed on the probationer and suspended, and impose on the probation violator a more severe sentence than that originally imposed. The majority of six held that the statute contained no such authority. In his dissent Mr. Justice FRANKFURTER, after stressing the flexibility of the statute, read it broadly as allowing the imposition of a more severe sentence after a violation of probation than that originally given and suspended. The dissenters also would have reached and rejected the issue of whether the imposition of such a sentence violated the ban on double jeopardy, an issue raised by the appellant in *Roberts* but not reached by the majority.

adds the means for exercising wisely that discretion which, within appropriate limits, is given to courts. The probation system was devised to allow persons guilty of anti-social conduct to continue at large but under appropriate safeguards. The hope of the system is that the probationer will derive encouragement and collaboration in his endeavors to remain in society and never serve a day in prison * * * Thus the probation system is in effect a reliance on the future to reveal treatment appropriate to the probationer. In the nature of things, knowledge which may thus be gained is not generally available when the moment for conventional sentencing arrives. Since assessment of an appropriate punishment immediately upon conviction becomes very largely a judgment based on speculation, the function of probation is to supplant such a speculative judgment by judgment based on experience."

In the case of parole and conditional release, however, the sentencing court has found that there is ground to subject the convicted defendant to a term of imprisonment both for purposes of punishment and rehabilitation, leaving it to the parole authorities to determine, at the expiration of the defendant's minimum sentence, whether and when his rehabilitation will best be furthered by his release. The discretion to be thus exercised lies with the parole authorities, not the courts, and is based largely upon how the convicted defendant has adjusted to his confinement, a factor not present when the sentencing court makes its decision not to imprison the convicted defendant but to release him on probation or on conditional discharge (see *People v Johnson,* 43 AD2d 878).

We are not unaware of the recent decisions of the Supreme Court of the United States in *Morrissey v Brewer* (408 US 471) and *Gagnon v Scarpelli* (411 US 778), that the revocation of parole and probation entails a "grievous loss" of liberty (see 408 US, at p 482; 411 US, at pp 781-782) and that therefore such revocations require certain minimal protections for the defendant (see Note: Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations, 74 Mich L Rev 525, 526). But the Supreme Court's recognition of similarities between probation and parole does not carry with it an implication that probation and parole must receive the same treatment under the equal protection clauses of the State and Federal Constitutions on the question of whether jail time credit must be granted alike to probationers and parolees for time spent by them while on

probation or parole. One similarity does not make an identity for purposes of the equal protection clauses. The vital differences between the purposes and methods of implementation of parole and probation, as when one is eligible for each, how each is enforced, the relationship of each to imprisonment, the agency determining to whom each shall be granted, etc., all serve to justify differential treatment by the State of those in each of the two statuses under the equal protection clauses.

The defendant contends that in dealing with the equal protection question this court must use as its test whether the difference in treatment afforded defaulting parolees as against defaulting probationers is required by a pressing State necessity, because the denial of jail credit for street time to a probationer involved a denial of liberty. We find no merit to this argument since a defendant who receives a sentence of probation has been found guilty of a crime and has escaped incarceration only because the sentencing court, in the exercise of its discretion, has decided that his rehabilitation, a goal of the penal system, can best be furthered by his release and close supervision by probation authorities. As the court noted in *People ex rel. Robinson v Warden* (58 AD2d 559, mot for lv to app dsmd as moot 42 NY2d 810), "[a] probation term differs from a prison term in that it is intended to afford a sentencing court an opportunity to determine whether its confidence is misplaced (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 65.15, subd 1)." In like view, the Supreme Court of the United States, in *McGinnis v Royster* (410 US 263, 276, *supra),* held that differential treatment as to good time credit for time spent in a county jail as against time spent in a State prison need meet only the legitimate State purpose test, not the "strict judicial scrutiny" test. Applying that test here we find that the statutory distinctions drawn by the Legislature have "some basis in practical experience" and advance "some legitimate state interest". They do not, therefore, offend the equal protection clauses.

The defendant also contends that the denial to him of jail time credit for time he was out on the street on probation violates the Federal and State constitutional bans on double jeopardy insofar as it imposes on him multiple punishments for the same offense. However, this is not a case of a retrial for the same offense as was the situation in *People v Brown* (40 NY2d 381, 386), cited by the defendant. "Accordingly,

defendant's claim of 'double jeopardy' must fall" *(People ex rel. Robinson v Warden,* 58 AD2d 559, 560, *supra).*

We have also considered the defendant's contention that the sentence imposed on his conviction of violation of probation, a maximum of seven years' imprisonment to run consecutively to his other sentence, should be modified in the interests of justice and have determined that under the facts of this case we would not be warranted in modifying the sentence imposed.

The amended judgment appealed from should therefore be affirmed.

MOLLEN, P. J., HOPKINS, SUOZZI and O'CONNOR, JJ., concur.

Amended judgment of the Supreme Court, Kings County, rendered July 30, 1975, affirmed.