STATE, Plaintiff-Respondent, v. ADERHOLD, Defendant-Appellant.†

Court of Appeals

*No. 79-214-CR. Submitted on briefs July 5, 1979.— Decided July 13, 1979.*
(Also reported in 284 N.W.2d 108.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard L. Cates,* State Public Defender, and *Bryan J. Borman,* Assistant State Public Defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* Attorney General, and *Thomas J. Balistreri,* Assistant Attorney General.

Before Decker, C.J., Cannon, P.J., and Moser, J.

MOSER, J.   The defendant, Aderhold, presents this court with an issue never yet directly decided by any Wisconsin appellate court: whether "street time" spent on probation must be deducted from a prison sentence to be served following a probation revocation hearing.

On May 5, 1977, the defendant pleaded guilty to operating an automobile without the owner's consent in violation of sec. 943.23, Stats. Pursuant to plea negotiations, the charge of operating an automobile without an operator's license in violation of sec. 343.05 (1) (3) was dismissed. The defendant also pleaded guilty to a charge of misdemeanor theft in violation of sec. 943.20 (1) (a) and (3) (a), which charge, as a result of plea negotiations, was reduced from felony theft, sec. 943.20 (1) (a) and (3) (b). Pursuant to the Youthful Offender Act, sec. 54.04, the trial court placed the defendant on probation for two years for each count, to run concurrently.

On December 21, 1978, the probation on both counts was revoked, the defendant having been found guilty on June 14, 1978, of a burglary occurring on July 16, 1977. For the burglary conviction the defendant was sentenced as a youthful offender to a three-year indeterminate term; for the operating auto conviction the defendant was sentenced to an indeterminate term of two years; and for the misdemeanor theft conviction, the defendant was sentenced to an indeterminate term of six months, concurrent with the two-year sentence.

The notices of appeal were filed on February 9, 1979, from the judgments of conviction and sentence to confinement entered on December 21, 1978.[1]

At the probation revocation proceeding, defense counsel advocated to the trial court the same position as the appellate counsel advocates to this court: to deny the defendant commitment credit[2] for time spent successfully on probation is a denial of the equal protection clause of the United States Constitution. We are also asked to calculate the number of days the defendant should receive as credit. Because we hold that the defendant is not entitled to such credit as a matter of right, we do not address the second issue.

The defendant urges this court to apply the strict scrutiny test in this case, arguing that the conditional liberty involved is a fundamental interest.[3] Our supreme court has applied the rational relationship test in con-

[1] The misdemeanor theft, Case No. I-9086, and the operating auto, Case No. I-9617, were consolidated for appeal.

[2] This case does not involve the crediting of preincarceration time to a subsequent sentence. *Klimas v. State*, 75 Wis.2d 244, 249 N.W.2d 285 (1977). The good time involved in this case is commonly referred to as "street time" in parole cases. *See State ex rel. Hauser v. Carballo*, 82 Wis.2d 51, 261 N.W.2d 133 (1978).

[3] *Graham v. Richardson*, 403 U.S. 365, 375–76 (1971).

sidering the treatment of two classes of parole violators,[4] in which the treatment affected the conditional liberty of the violators. We cannot perceive of any distinction between parolees and probationers, which would change this conditional liberty into a fundamental right for probationers but not for parolees.

The probationer has been found guilty of a crime, and was not incarcerated because the trial court, in its discretion, determined that the rehabilitation of the probationer, the goal of the penal system, would best be accomplished by the release of the probationer under supervision.[5]

Additional support for the conclusion that the strict scrutiny test is not the appropriate test to be applied in this case is found in a decision of the United States Supreme Court.[6] The court upheld a New York statute which allowed "good time" credit for time spent in a state prison, but not for time spent in a county jail prior to conviction. The statute allowed up to a maximum of ten days' credit for each month spent in a state prison or penitentiary, based on "good conduct and efficient and willing performance of duties assigned." This, in turn, affected the date a prisoner was eligible for parole. In so doing, the court applied the rational relationship test:

The determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded requires only *some rational basis* to sustain them. . . . We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the chal-

---

[4] *State ex rel. Hauser v. Carballo*, n. 2 *supra* at 67–68, 261 N.W.2d at 141, quoting from *Putnam v. McCauley*, 70 Wis.2d 245, 263–64, 234 N.W.2d 75, 78 (1975).

[5] *People v. Gilmore*, 63 A.D.2d 45, 407 N.Y.S.2d 48, 51 (1978).

[6] *McGinnis v. Royster*, 410 U.S. 263 (1973).

lenged distinction *rationally furthers some legitimate, articulated state purpose.*[7]

Several state and federal jurisdictions have directly addressed the issue before this court. The majority of these jurisdictions have applied the less stringent rational relationship test.

In *People v. Gilmore,*[8] the court set forth the "vital differences between the purposes and methods" of the implementation of parole and probation:

(1) When a person is eligible for either parole or probation;

(2) The enforcement procedures of parole and probation;

(3) The relationship of parole and probation to imprisonment;

(4) The agency deciding who should be granted parole or probation.

These factors were held to justify the different treatment of parolees and probationers in compliance with equal protection clauses of the state and federal constitutions. The similarities between parole and probation, recognized by the United States Supreme Court,[9] do not imply that parole and probation must necessarily be treated the same in all circumstances for equal protection purposes.[10]

The court in *Gilmore* also rejected the defendant's contention that the correct test to be applied in determining whether the difference in treatment of jail credit for street time violates equal protection is the strict scrutiny

---

[7] *McGinnis, supra* at 270. [Citations omitted.] [Emphasis supplied.]

[8] 63 A.D.2d 45, 407 N.Y.S.2d 48 (1978).

[9] *Gagnon v. Scrapelli,* 411 U.S. 778 (1973); *Morrissey v. Brewer,* 408 U.S. 471 (1972).

[10] *Gilmore,* n. 5 *supra,* 407 N.Y.S.2d at 51.

test. The defendant argued that this test was mandated because the fundamental right of liberty was involved. In so rejecting the defendant's arguments, the court applied the rational relationship test and upheld the different treatment of credit for probationers and parolees.[11]

The Federal District Court of Western Missouri considered this issue in 1977.[12] The court held that denying credit for time served on probation, while allowing such credit for time spent on parole, did not deny equal protection. Although the equal protection clause of the fourteenth amendment does not require that persons of different classes be treated in the same manner, the legislative classifications " 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "[13]

After determining that these two groups are distinct classes of persons not similarly situated, and that a rational basis for this classification exists, the court held that even if it were to consider probationers and parolees as one class of persons similarly situated, the legislative distinctions in treatment of probationers and parolees must be upheld if the distinction has a rational relation to a legitimate governmental interest.[14] The court found it "obvious" that the legislative classification rationally furthers a legitimate state purpose.

Before the administrative parolee in Missouri is eligible for parole, he must spend a statutorily set minimum time in prison and without an infraction of the rules. The

[11] *Id.* The court relied on *McGinnis v. Royster, supra* at note 6, in concluding that the rational relationship test, as opposed to strict scrutiny, is the proper test to be applied.

[12] *White v. Wyrick*, 432 F. Supp. 1316 (W.D. Mo. 1977).

[13] *Id.* at 1318, quoting from *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

[14] *White v. Wyrick, supra* at 1319, citing *McGinnis v. Royster*, 410 U.S. 263, 270 (1973).

state may, therefore, rationally determine that the possibility of reincarceration of the parole violator without credit for street time is not in the public interest. It may also rationally determine that, in the case of the probationer[15] who has not been imprisoned, the probationer must have enough time remaining on his sentence to deter him from either violating the conditions of his probation or absconding.[16]

The rational relationship test has also been used by the Tenth Circuit Court of Appeals in answering this credit question.[17] "[T]he distinctions between the alternatives of probation and parole . . . demonstrate a rational basis for the difference with respect to credit for time served before revocation of probation as opposed to parole."[18]

The court agreed with the state's position that it was rational for the legislature to leave to the discretion of the sentencing court the choice of whether to give the probationer, upon revocation, credit for street time "in order that the court have the possibility of compelling service of the full sentence confronting the defendant, to best encourage faithful observance of probation conditions."[19] Additional support was found in the different entities retaining control over probationers (the sentencing court) and parolees (the parole commission).

Equal protection does not require symmetry in probation and parole systems. Because there is a rational basis furthering a legitimate state interest in the differing treatment of probationers and parolees with respect to credit for street time, the court held that such distinctive

[15] Missouri law also allows for judicial parole. The judicial parolee is in the same class as the probationer. We have used the term probationer here to include judicial parolees.

[16] *White v. Wyrick,* n. 12 *supra.*

[17] *United States v. Shead,* 568 F.2d 678 (10th Cir. 1978).

[18] *Id.* at 683.

[19] *Id.*

treatments do not deny the probationer equal protection.[20]

We find the reasoning of these cases persuasive and adopt such reasoning. The sanctions available upon revocation of parole and probation are significantly different. Both the discretionary and mandatory release parolee face the possibility of imprisonment upon revocation of parole. The discretionary parolee is out doing "prison time" while on parole. The mandatory release parolee is doing "good time" while on parole. In either case the parolee faces the threat of further imprisonment for revocation of parole. In both cases, the parolee has served a minimum period in prison, and under the supervision and control of the prison authorities.[21]

Should the revoked probationer be entitled as a matter of right to credit against his sentence for all time successfully served while on the street, it is possible, even probable in misdemeanor cases, that he would face no further sanctions for a violation of probation.

The sentencing court may, in placing the defendant on probation, either withhold sentence, and place the defendant on probation, or may impose sentence, stay its execution and place the defendant on probation.[22] It is in the latter situation that the court could find itself without any sanctions for a violation of probation. Oftentimes the court will place a defendant on probation for a period longer than the imposed but stayed sentence, an option provided for by the legislature.[23] Under the new classification of misdemeanors,[24] the minimum period of

---

[20] *Id.* at 684.

[21] *State ex rel. Hauser v. Carballo*, n. 2 *supra*, succinctly details the sanctions for parole violators.

[22] Sec. 973.09 (1), Stats.

[23] Sec. 973.09 (2), Stats.

[24] Sec. 939.51 (3), Stats.

probation provided for in sec. 973.09(2), Stats., exceeds the maximum possible period for imprisonment for some misdemeanors. It is clear in these situations, that if the probationer were to automatically receive full credit for time successfully served on probation, once the possible term of imprisonment (90 days) had passed, there would be no possible sanctions available to the court for probation violations and thus no real incentive to obey the provisions of probation.

The legislature has rationally determined that it is in the best interest of the public, and in furtherance of the state's interest in encouraging the faithful observance of the conditions of probation, to allow the sentencing court the necessary discretion to impose an appropriate period of imprisonment after probation has been revoked. We agree that the legislature's determination that probationers and parolees be treated in different manners with respect to credit for successfully served street time against service of a prison sentence is rationally related to the state's legitimate governmental interests.

We note that attached to the appellant's reply brief is what is purported to be a letter from appellant's counsel to the registrar of the Fox Lake Wisconsin Correctional Institution and the response of the registrar of that institution. These documents postdate the notice of appeal and certainly are not part of the record.

The rule is well established that reviewing courts are limited to the record, and are bound by the record. The record is not to be enlarged by material which neither the trial court, nor the appellate court, acting within their respective jurisdictions, have ordered incorporated in the record.[25]

---

[25] *State ex rel. Wolf v. Town of Lisbon*, 75 Wis.2d 152, 155–56, 248 N.W.2d 450, 452 (1977).

The supreme court once stated:

Defendant-respondent has appended to its brief a copy of a purported sales contract between the parties and has made an argument based thereon. Counsel well knows this is highly improper, since it is no part of the record on demurrer, and any future indulgence in such practice will evoke more than a reprimand from this court.[26]

Counsel for the appellant here shall consider himself admonished.

*By the Court.*—Judgments affirmed.

[26] *Handy v. Holland Furnace Co.,* 11 Wis.2d 151, 155, 105 N.W.2d 299, 301 (1960).