STATE of South Dakota, Plaintiff
and Appellee,

v.

Lewellyn SOFT, Defendant
and Appellant.

No. 13778.

Supreme Court of South Dakota.

Argued Nov. 17, 1982.

Decided Jan. 19, 1983.

Curtis G. Wilson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Rick A. Cain of Dupper & Cain, Mobridge, for defendant and appellant.

DUNN, Justice.

This is an appeal from a conviction of second-degree burglary pursuant to SDCL 22–30A–17 and grand theft pursuant to SDCL 22–32–3. We affirm in part and reverse in part.

On the morning of February 27, 1982, Mr. and Mrs. John Aman returned to their home in Mobridge, South Dakota, after an absence of approximately one week. The Amans noticed that a window in their front door was broken and Mr. Aman later discovered that some of his wife's jewelry was missing. Mr. Aman notified the police and they arrived to investigate the incident.

The Walworth County Sheriff was in Mobridge that same day and was informed of the missing jewelry. The sheriff decided to visit a local pawn shop dealer to see if any jewelry sales had been transacted during the Amans absence from Mobridge. The sheriff discovered that Lewellyn Soft (appellant) attempted to pawn or sell a necklace that very morning.

Leaving the pawn shop, the sheriff set out to find appellant. At approximately 1:05 p.m., the sheriff spotted appellant walking alone so he stopped his vehicle and began asking appellant some questions. When asked to see the necklace he tried to pawn, according to the sheriff, appellant responded "I don't have a necklace, prove it." At that moment, something fell out of appellant's right jacket pocket and onto the ground. The item was a lady's necklace. The sheriff got out of his vehicle, picked up the necklace, took appellant into custody, and then escorted him to the police station. In a subsequent search, another necklace was found—this time in his left jacket pocket.

A short time later, a deputy sheriff examined appellant's boots and was instructed to follow appellant's footsteps in the snow from the place he was arrested. The trail led the deputy onto railroad property to a stack of rails and railroad ties and under each he found jewelry. Later, at the Amans' residence, the deputy noticed that footprints in the snow were identical to those at the railroad yard. This time, however, there was also a second set of prints. These were smaller and were formed by crepe-soled shoes or tennis shoes. Photographs were taken of the footprints at both locations.

At trial, the State produced Cedric LeBeau to testify that he was with appellant when he entered the Amans' residence and stole the jewelry. LeBeau's footprints, from the shoes he was wearing at the time he was apprehended, were different from the second set of prints found in the snow, although the length, width and instep were the same. The State also produced witnesses to establish that the value of the jewelry stolen was $265.00. After hearing the evidence, the jury found appellant guilty of both second-degree burglary and grand theft.

We first address appellant's contention that the sheriff did not have probable cause to arrest appellant without a warrant. We agree with appellee that this issue requires a two-step analysis. First, whether there was sufficient grounds to make an investigatory stop of appellant and, second, if so, did the additional information gathered during the investigation amount to probable cause for the warrantless arrest.

In *State v. Burkman,* 281 N.W.2d 436, 439 (S.D.1979), this court stated:

A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties.

In the case at hand, the facts indicate that the sheriff acted reasonably when he stopped appellant for questioning. Prior to stopping appellant, the sheriff was informed of a burglary in Mobridge involving missing jewelry and he knew appellant had tried to pawn ladies' jewelry on the day of his investigation. Although these facts may not justify an arrest, we believe they were adequate to justify an investigatory stop of appellant.

The second step of the analysis is to determine whether information gathered during the investigation provided the sheriff with probable cause to make a warrantless arrest of appellant pursuant to SDCL 23A–3–2. As we stated in *Burkman, supra:*

> The test for probable cause is simply: Were the actions of the suspect, viewed in the context of the attendant circumstances, such that they would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person was engaged in criminal activity?

*Id.,* at 439–40. Using this standard, we believe there was probable cause for the warrantless arrest in the case at hand. The sheriff's request to see the necklace appellant tried to pawn was met by appellant's assertion that "I don't have a necklace, prove it." Thereafter, a necklace fell out of appellant's pocket and contradicted his prior statement. We believe that, when viewed from the totality of the circumstances known to the sheriff at that time, the sheriff had probable cause to arrest appellant.

■ Appellant next contends the racial composition of the jury panel denied his Sixth Amendment right to trial by a jury drawn from a fair cross-section of the community. Appellant claims the trial court erred by not supplementing the jury panel with Indian people when the sole Indian on the jury roster was excused from serving. Appellant bases his argument on recent statistics showing 5.86% of the Walworth County population and 9.36% of the City of Mobridge population to be comprised of Indians.

In *State v. Hall,* 272 N.W.2d 308, 310 (S.D.1978), we stated "that the burden is now upon the judiciary, not only to prevent purposeful discrimination against minorities but to insure that all identifiable groups in the community are fairly represented on jury panels." To guard against underrepresentation of minorities, this court developed a standard which said that "an absolute percentage difference of fifteen percent or

more would require supplementation of the jury panel." *Id.,* at 311. Since prospective jurors are selected on a county-wide basis (SDCL 16–13–1), we find the underrepresentation in this case would only be 5.86%. We find this panel contained a fair representation of the community and did not require supplementation. *See United States v. Clifford,* 640 F.2d 150 (8th Cir. 1981).

■ Appellant contends the trial court erred in refusing to give the proffered jury instruction regarding the specific intent element of grand theft. Specific intent is the intent to accomplish the precise act which the law prohibits. *State v. Poss,* 298 N.W.2d 80 (S.D.1980). Although the specific intent instruction was provided for second-degree burglary, this does not satisfy the requirements of grand theft. Specific intent is established in grand theft when the person takes or exercises control over the property. SDCL 22–30A–1. Specific intent for burglary, however, is formed when a person enters or remains in an occupied structure with the specific intent to commit the crime (of theft). SDCL 22–32–3.

We believe the trial court must instruct separately on the specific intent element of grand theft. That instruction was specifically requested by the appellant in the case at hand. Since the trial court failed to so instruct, we reverse the conviction for grand theft. We find it unnecessary to remand this case, however, because appellant was serving two consecutive terms; twelve years for second-degree burglary and five years for grand theft. Appellant will still be required to serve out the duration of his twelve-year term.*

■ Appellant contends the trial court erred in not instructing that persons who are unconscious of their acts are not capable of committing crimes. SDCL 22–3–1(5). In essence, appellant asks this court to approve the use of an unconsciousness instruction when the unconsciousness is induced by

---

* Since we reverse the grand theft conviction, we do not address appellant's contention that he was denied discovery of documents relating to the value of the jewelry.

voluntary intoxication. This we refuse to do.

South Dakota law specifically provides that the acts of a person who is voluntarily intoxicated are no less criminal because of their intoxication, although it may be taken into account in determining purpose, motive or intent. SDCL 22–5–5. While we have not specifically addressed the applicability of the unconsciousness instruction to voluntary intoxication, other courts have. Most relevant to our discussion is *People v. Arriola,* 133 Cal.Rptr. 824, 330 P.2d 683 (1958). There the defendant raised intoxication as a defense to a charge of grand theft. The California Supreme Court concluded that in situations involving voluntary intoxication, even if the intoxication leads to unconsciousness, or a temporary interference with the mental facilities, it is governed by the statute on voluntary intoxication rather than the statute dealing with unconsciousness from other causes. We agree with this interpretation of the statutes, and conclude the voluntary nature of the intoxication in this case precluded using the unconsciousness instruction.

▪ Appellant asserts the trial court erred in not granting a mistrial motion resulting from comments about other crimes made by the prosecuting attorney and a prosecution witness. We cannot agree. We note that in both instances the trial court instructed the jury to disregard the comments. Moreover, earlier in the trial, appellant's counsel had already raised the issue of prior crimes, even though the trial court had previously ruled that evidence of other crimes by appellant was more prejudicial than probative. When asked by appellant's counsel what a defense witness knew about Lewellyn Soft, the defense witness responded: "I've seen his name in the police notes a lot." We believe any inferences of other crimes, if they existed at all, were first raised by appellant's counsel. As we noted in *State v. Smith,* 325 N.W.2d 304, 306 (S.D.1982), "[a]ppellant will not be allowed to complain of testimony appellant himself elicited." The motion for mistrial was properly denied.

▪ Finally, appellant argues that comments by the prosecuting attorney during closing arguments regarding appellant's intoxication were improper and should have resulted in a mistrial. The prosecuting attorney stated:

Ladies and gentlemen, the evidence is before you. I'm not willing to let a guilty person off just because he says he was drunk. There is cause to consider whether he is using this as a crutch, or if he genuinely didn't know what he was doing. I submit to you, the facts that have been proved [sic] here in this courtroom show that he did know, that he was conscious, and he should be held accountable.

In context, these comments merely state that a person is still legally responsible for his acts even if he is intoxicated. That is a correct statement of the law. The prosecuting attorney's remarks did not entitle appellant to a mistrial.

Accordingly, we affirm that portion of the judgment regarding the second-degree burglary and reverse that portion involving grand theft.

All the Justices concur.