STATE of South Dakota, Plaintiff and Appellee,

v.

Richard Tracy ANDERSON, Defendant and Appellant.

No. 13782.

Supreme Court of South Dakota.

Argued Jan. 19, 1983.

Decided March 30, 1983.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jeff Larson, Public Defender's Office, Sioux Falls, for defendant and appellant.

DUNN, Justice.

This is an appeal from an order revoking a suspended imposition of sentence and the subsequent imposition of sentence. We affirm.

On May 5, 1980, Richard Tracy Anderson (appellant) was arrested for driving under the influence of an intoxicating beverage in violation of SDCL 32–23–1(2). In addition to being charged with violating this provision, appellant was also charged for violation of SDCL 32–23–4 which makes the third offense of driving while under the influence of alcoholic beverages a felony.

On September 18, 1980, appellant entered into a plea bargain with the State. The terms of the plea bargain were reduced to writing by the trial court in its order of suspension of imposition of sentence. In return for pleading guilty to both counts, appellant received a suspended imposition of sentence and was placed on unsupervised probation for eighteen months. As part of the plea bargain, appellant was ordered to spend thirty days in jail with work privileges and ordered to pay a fine and court-appointed attorney fees. The order also prohibited appellant from operating a motor vehicle in the state of South Dakota for three years. In addition to the written order, the court verbally apprised appellant of the substance of the plea bargain and received assurances from appellant that he understood its contents.

On December 2, 1981, appellant was again arrested for driving while under the influence of an alcoholic beverage. Follow-

ing the arrest, the State sought revocation of the suspended imposition of sentence on the grounds that appellant had violated the order prohibiting him from operating a motor vehicle in South Dakota. A revocation hearing was held on March 2, 1982, and the trial court found that appellant had violated the terms of the suspended imposition of sentence. At a sentencing hearing held on March 16, 1982, the trial court imposed a two-year sentence in the state penitentiary and also imposed a $2,000 fine.

■ Appellant contends the trial court erred in applying the "reasonable suspicion" standard to automobile stops. Instead, appellant asserts that police officers must have "probable cause" to believe an offense was committed before they can make a routine traffic stop. Since appellant believes probable cause was not established in the case at hand, he contends the evidence procured as a result of the stop is not admissible. We cannot agree.

While we recently had occasion to discuss the grounds necessary to make an investigatory stop of a pedestrian, *State v. Soft,* 329 N.W.2d 128 (S.D.1983), we have not reached this precise issue as it relates to routine traffic stops. We find the approach followed in Minnesota, as articulated in *Marben v. State, Dept. of Public Safety,* 294 N.W.2d 697 (Minn.1980), to be persuasive. There, the appealing party contended the initial stop without a warrant by a police officer was inconsistent with Fourth Amendment protections. In addressing this issue, the Minnesota Supreme Court stated:

It is well settled that in accordance with the Fourth Amendment of the United States Constitution a police officer may not stop a vehicle without a reasonable basis for doing so. Consistent with the principles set out in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *the officer must have a specific*

*and articulable suspicion of a violation before the stop will be justified.*

294 N.W.2d at 699 (emphasis supplied).

The standard, which we will define as the reasonable suspicion standard, was more precisely defined in *People v. Ingle,* 36 N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39 (1975). Discussing the standard, the court said:

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal.... All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

36 N.Y.2d at 420, 369 N.Y.S.2d at 74, 330 N.E.2d at 44 (citation omitted).

We take this opportunity to extend the reasonable suspicion standard to automobile stops of the nature present in the case at hand.[1] Here, an experienced police officer with special training in the detection of drinking drivers observed appellant's driving skills in the early morning hours of December 2, 1981. The officer noted appellant's vehicle was veering into snow-packed areas on the road and then weaving back to the clear lane, frequently leaving the traffic lane. We believe these activities, observed over several blocks, provided the police officer with a specific and articulable reason to stop appellant's motor vehicle to determine whether appellant was driving while under the influence of an alcoholic beverage.

Appellant next contends the trial court's failure to grant him credit on his maximum two-year sentence for the thirty days he spent in jail as a condition of his suspended imposition of sentence violates the double jeopardy clauses of both the United States and South Dakota Constitutions.[2] We cannot agree.

---

1. This standard has been applied by this court in other factual situations. *See State v. Soft,* 329 N.W.2d 128 (S.D.1983); *State v. Coe,* 286 N.W.2d 340 (S.D.1979); *State v. Boardman,* 264 N.W.2d 503 (S.D.1978).

2. The Fifth Amendment of the United States Constitution reads:

No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval

In *State v. Lohnes,* 266 N.W.2d 109 (S.D. 1978), we said: "Time served on probation need not be credited on a sentence imposed after revocation. This is true even where one of the conditions of probation includes some form of incarceration." *Id.* at 114 (citations omitted). Appellant contends that the extension of *Lohnes* beyond its facts will result in constitutional violations as set forth in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). While *Lohnes* was denied credit for time served, appellant asserts this did not involve the subsequent imposition of a maximum sentence as exists in the case at hand. Following recent Michigan precedent, appellant believes that failure to grant credit for prior incarceration will "lead to the anomalous result of a defendant suffering longer incarceration as a result of having been placed on probation than if initially sentenced to the maximum prison term possible for the offense." *People v. Sturdivant,* 412 Mich. 92, 97, 312 N.W.2d 622, 625 (1981).

█ While we acknowledge the position taken by the Michigan Supreme Court, we decline the invitation to adopt it in this jurisdiction. *Pearce, supra,* addresses the basic constitutional guarantee against double punishment in cases where credit is denied for time served on a void conviction when the defendant is later sentenced following his reconviction. That situation varies considerably from the case at hand. Here, we are asked to consider whether a person is placed in double jeopardy when he is resentenced following violation of probation and credit is denied for time served as a condition of probation. We believe time served as a condition of probation need not be credited on a sentence imposed after revocation, even if that resentencing results in the imposition of the maximum statutory

forces, or in the militia when in actual service, in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

sentence. *See State v. Lohnes, supra;* *Vezina v. State,* 289 N.W.2d 408 (Minn.1979); *State v. Fuentes,* 26 Ariz.App. 444, 549 P.2d 224 (1976) *aff'd* 113 Ariz. 285, 551 P.2d 554 (1976). Although neither party cites it for authority, we believe SDCL 23A–27–13 provides legislative intent to support this proposition. This statute discusses the situations in which a suspended imposition of sentence can be imposed and when revocation of such suspension is warranted. The statute provides, in pertinent part:

A court may revoke such suspension at any time during the probationary period and impose and execute sentence without diminishment or credit for any of the probationary period.

Finally, we also believe there are strong public policy reasons which compel us to deny credit for time served while on probation. Those reasons were best stated in *State v. Young,* 273 Minn. 240, 141 N.W.2d 15 (1966):

[I]f credit were required to be given, it is foreseeable that a sentencing court would be less inclined to impose the risks of probation upon society, knowing that such concessions might hinder communicating to the defendant the full impact of responsibility for his acts and, possibly frustrate rehabilitation. The effect upon a probationer could well be less respect for the restraints of probation and obedience to the law, with increased danger of recidivism. *It is essential that a court should retain the threat of the original sentence upon breach of probation in order more effectively to discipline a probationer and protect against the risk of repeated injury to society.*

*Id.* at 247, 141 N.W.2d at 20 (emphasis supplied).[3]

Article VI, § 9 of the South Dakota Constitution reads:

No person shall be compelled in any criminal case to give evidence against himself or be twice put in jeopardy for the same offense.

3. The present statute restricts to sixty days the time a trial judge can sentence an individual to a county jail as a condition of probation. SDCL 23A–27–18.1. We do not read this deci-

Appellant contends revocation of his suspended imposition of sentence violated his due process right to be informed of the claimed violation. Appellant received notice that revocation was being sought because he breached the prohibition against driving which was contained in the order. Appellant asserts, however, that the prohibition of driving was *not* a condition or term of his unsupervised probation. Instead, appellant asserts the prohibition against driving is separable and distinct from the conditions of probation as set out in the order. We cannot agree.

The order suspending the imposition of sentence states, in pertinent part:

ORDERED, ADJUDGED AND DECREED that no judgment of guilt shall be entered at this time and the Court does hereby suspend the imposition of sentence and place the Defendant upon unsupervised probation for and during a period of eighteen months from the date hereof upon the following terms and conditions:

1. That the said defendant serve thirty (30) days in jail, work release authorized, with said sentence to be served in either Pipestone County or Hennepin County, and with said sentence to be served by November 18, 1980. Any costs of said incarceration to be paid by said defendant.

2. That the said defendant pay a fine of $500.00 plus $25.00 for LOTF.

3. That the said defendant reimburse Minnehaha County for attorney fees involved in this case and involved in CR. 80–139, with payment of said fine, costs and attorney fees to be monitored through the Court Service Department and all to be paid within 18 months.

4. That the said defendant waive extradition back to the State of South Dakota upon request by the Court to appear in this matter.

*IT IS FURTHER ORDERED that the defendant is prohibited from operating a* *motor vehicle upon the public highways of this state for a period of three years.* (Emphasis supplied.) While it may not be a model of clarity, the order clearly states that denial of driving privileges is part of the suspended imposition of sentence. Given that the driving violation here occurred within the eighteen-month probationary period, we find revocation of appellant's suspended imposition of sentence for driving in violation of the order does not constitute a denial of liberty without due process of law. In the future, however, we expect trial courts to more precisely define which actions are prohibited during the probationary period and which actions are prohibited beyond that period.

Appellant's second allegation of denial of due process asserts the trial court relied on appellant's failure to reimburse the county for attorney fees as rationale for revoking the suspended imposition of sentence. Since appellant did not receive prior notice of this claimed violation, he asserts his due process rights were denied. Appellant received notice that revocation would be sought for driving a vehicle in South Dakota in violation of the terms of the order. Although no findings of fact or conclusions of law were filed, the record clearly indicates revocation was warranted once this violation was established. The discussion of past due attorney fees was brief and peripheral in nature since the primary reason for revocation, driving in violation of the terms of the order, was established. While the statements regarding other possible grounds for revocation of the order were beyond the parameters of the notice of claimed violations, it was not error which resulted in denial of due process to appellant. *See People v. Hunter,* 106 Mich.App. 821, 308 N.W.2d 694 (1981).

Finally, appellant asserts there is insufficient evidence in the record to find a violation of the suspended imposition of sentence. Appellant's contention is based on the erroneous conclusion that the prohibi-

sion so broadly as to assert that there are no limits to the length of time the legislature may fix as probationary incarceration without a cor-responding credit being given for any sentence imposed after revocation.

tion against driving in South Dakota was not part of the terms and conditions of the order of suspended imposition of sentence. We have already established that the prohibition was a condition of the order and we find ample evidence in the record to establish that this condition was violated.

The order is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

As portrayed by the facts herein, this arrest was anything but a routine traffic stop. Although I concur in the results of this case, I do not approve of the language contained in the 1975 New York citation set forth in the majority opinion. It appears to me that the New York decision takes a more liberal approach than the United States Supreme Court in this matter of stopping cars on the highway for a "routine traffic check." The New York decision goes beyond the Minnesota Supreme Court decision and the United States Supreme Court decision of *Terry v. Ohio.* Erosions of liberty do not come in giant leaps, they come in miniscule encroachments often hidden to the trained and educated mind. Like a thief in the night, language can steal a liberty deeply ingrained in the fabric of the American way of life. I am afraid of each little encroachment on the liberty of my fellow Americans on the highway. There must be a reasonable basis for stopping a vehicle on the highway and that reasonable basis must be rooted, in facts, which give rise to a specific and articulable suspicion of a violation. When a routine traffic stop is made, where is the inherent evil (gravity thereof) which is sufficient to outweigh the interest of an individual's liberty, who is temporarily restrained? If the reasonable suspicion standard test is applied, an individual's liberty must be balanced against the prevention of an evil. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Routine traffic checks are European authoritative culture. They are the advent of a police state on the highway.